UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY WILLIAM CORTINAS, | 1:17-cv-00130-GSA-PC |
| Plaintiff, | **SCREENING ORDER** |
| vs. | **ORDER FINDING COGNIZABLE CLAIMS** |
| M. HUERTA, et al., | **(ECF No. 1.)** |
| Defendants. | **ORDER FOR PLAINTIFF TO EITHER:** |

**ORDER FOR PLAINTIFF TO EITHER:**

   **(1) FILE AN AMENDED COMPLAINT, OR**

   **(2) NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY WITH COGNIZABLE CLAIMS**

**ORDER DENYING REQUEST FOR APPOINTMENT OF COUNSEL**

**THIRTY DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED**

## I.    BACKGROUND

Larry William Cortinas ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  On January 30, 2017, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)

1

On March 3, 2017, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 8.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

Plaintiff's Complaint is now before the court for screening.

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

///

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the Complaint allegedly occurred.  Plaintiff names as defendants Correctional Officer (C/O) M. Huerta, C/O J. Scalia, Lieutenant (Lt.) A. Ruiz, Sergeant (Sgt.) A. Randolph, and five Doe Defendants (collectively, "Defendants").

Plaintiff's allegations follow.  On December 31, 2014, at approximately 10:00 a.m., C/O Huerta ordered Plaintiff to exit his cell so his cable box could be fixed.  C/O Huerta handcuffed Plaintiff per policy, then escorted him roughly 20 feet to the shower.  The handcuffs were left on.  After about 10 minutes, C/O Huerta and C/O Scalia ordered Plaintiff to back out of the shower.  C/O Huerta placed a "controlled arm bar hold[, g]ripping both my thumbs." (ECF No. 1 at 4.)  As Plaintiff approached his cell's open door, C/O Scalia and C/O Huerta slammed Plaintiff into the wall.  C/O Huerta applied his estimated 280 pounds into Plaintiff's back, while C/O Scalia pulled Plaintiff's right [leg] out from under him.  C/O Huerta landed on Plaintiff's back as Plaintiff was slammed onto the concrete floor.  C/O Scalia grabbed Plaintiff's hair and beard and slammed his face into the floor by lifting up Plaintiff's head by the hair.  Then C/O Scalia placed his knee on Plaintiff's neck and pounded Plaintiff's head into the concrete floor 10 times as he said, "You like this." (ECF No. 1 at 5.)  After the tenth time, Plaintiff lost consciousness.  He had a lemon-size knot on his left temple, a black eye, dizziness, ears ringing for two days, and vomiting.  Only due to the control tower's alertness was an alarm sounded.  For two weeks, Plaintiff was denied medical treatment.  He still suffers back and neck pain.

Between July 25, 2014, and October 18, 2014, Plaintiff wrote several complaints and 602 appeals against C/O Scalia about Scalia's abuse of mentally ill prisoners.  During this time, C/O Scalia was Plaintiff's legal runner.  All legal work was turned over to C/O Scalia for copies and mailing.  C/O Scalia warned Plaintiff to mind his own business, or else.  Plaintiff informed both Lt. Ruiz and Sgt. Randolph of the threats made by C/O Scalia.  In October 2014, during a 602 appeal, Lt. Ruiz and Sgt. Randolph were present when Lt. Ruiz stated, "I do not

get involved in personal conflict, Cortinas. Just do as C/O Scalia says. Turn away from stuff that does not concern you." (ECF No. 1 at 6.) Plaintiff responded, "How can you stand by while C/O Scalia pepper sprays Mexicans in holding telephone booth size cages? These guys are seriously ill. Do not speak English. Yet for no reason he f****s them up for sport. It's wrong." (ECF No. 1 at 6.) Yet Lt. Ruiz and Sgt. Randolph left Plaintiff in harm's way. Plaintiff wrote the Director of CDCR, who then sent the letters to the Warden, who gave them to Lt. Ruiz, who interviewed Plaintiff with Sgt. Randolph present. These letters are in Plaintiff's C-file. Lt. Ruiz and Sgt. Randolph left Plaintiff in harm's way and Plaintiff was injured by C/O Huerta and C/O Scalia on December 31, 2014. This was retaliation for using CDCR's appeals system and for Plaintiff's complaints to Lt. Ruiz and Sgt. Randolph.

Plaintiff requests monetary damages and injunctive relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the

meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.    **Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and

5

unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states cognizable claims for use of excessive force against defendants Huerta and Scalia.

**B.      Failure to Protect – Eighth Amendment Claim**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer v. Brennan, 511 U.S. 825, 833 (1970); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.

1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Plaintiff claims that Lt. Ruiz and Sgt. Randolph failed to protect him from assault by C/O Huerta and C/O Scalia. However, there are no alleged facts showing that Ruiz or Randolph knew about the assault or knew that Plaintiff was at substantial risk of serious harm. Plaintiff alleges he told Ruiz and Randolph that C/O Scalia had threatened Plaintiff, but this is not enough. To state a claim for failure to protect, Plaintiff must show that Ruiz and Randolph knew there was a substantial risk of serious harm to Plaintiff and consciously ignored or disregarded the risk, acting unreasonably or failing to act.

Therefore, Plaintiff fails to state a claim against defendants Lt. Ruiz or Sgt. Randolph for failing to protect him from harm in violation of the Eighth Amendment.

**C.    Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283,

1288 (9th Cir. 2003). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendant C/O Scalia threatened him, and that defendants C/O Scalia and C/O Huerta attacked him because he filed 602 appeals against C/O Scalia and told Sgt. Randolph and Lt. Ruiz about C/O Scalia's bad conduct and threats.

The court finds that liberally construed, Plaintiff states a cognizable retaliation claim against defendant Scalia for the threat he made against Plaintiff. A threat is an adverse action, and C/O Scalia warned Plaintiff to mind his own business, or else, which appears to warn Plaintiff not to complain about Scalia, "or else." This is sufficient to state a cognizable claim.

However, there are no facts linking the force used by Scalia and Huerta with Plaintiff's appeals. Plaintiff alleges that between July 25, 2014, and October 18, 2014, he wrote several complaints and 602 appeals against C/O Scalia for abusing mentally ill prisoners. The use-of-force incident did not happen until months later, in December 2014, and there are no facts linking it with Plaintiff's appeals. Speculation that the assault occurred because of the appeals does not show the requisite connection. Moreover, Plaintiff fails to allege that there was no legitimate penological purpose for the force used by C/O Huerta and C/O Scalia.

Based on the above, the court finds that Plaintiff states a cognizable claim for retaliation against defendant C/O Scalia for his threat against Plaintiff, but not against defendant C/O Huerta or C/O Scalia for using force against Plaintiff, or against any of the other Defendants.

### D. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant

injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . .

and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that he received no medical treatment following the attack by defendants Scalia and Huerta, although Plaintiff had lost consciousness during the assault, was vomiting, and had a lemon-size knot on his left temple, a black eye, dizziness, and ears ringing for two days. Plaintiff has sufficiently shown that he had a serious medical need. However, Plaintiff has not shown that any Defendant knew about his serious medical need and consciously ignored or disregarded it, failed to act reasonably, and caused Plaintiff to suffer harm. Therefore, Plaintiff fails to state a medical claim against any of the Defendants.

### E. Doe Defendants

Plaintiff names Doe defendants in this action. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

Further, Plaintiff has not made any allegations against the Doe defendants in his Complaint. To state a claim, Plaintiff must allege a defendant's personal participation in deprivation of Plaintiff's rights. Plaintiff has not done so for any of the Doe defendants. Therefore, Plaintiff fails to state a claim against any of the Doe defendants.

## V. REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff requests court-appointed counsel. Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. At this stage of the proceedings, the court cannot determine that Plaintiff is likely to prevail on the merits. The court has found that Plaintiff's Complaint states cognizable claims, but this finding is not a determination that Plaintiff is likely to succeed on the merits. Moreover, by this order Plaintiff shall be granted leave to file an amended complaint if he so wishes. Thus, at this juncture there is no complaint on file for which this case can proceed. Plaintiff's claims for excessive force, retaliation, and medical care are not complex, and Plaintiff appears able to adequately articulate his claims. Therefore, Plaintiff's motion shall be denied, without prejudice to renewal of the motion at a later stage of the proceedings.

## VI. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Complaint against defendants Huerta and Scalia for use of excessive force in violation of the Eighth Amendment, and against defendant Scalia for retaliation in violation of the First Amendment. However, Plaintiff fails to state any other claims against Defendants upon which relief may be granted under § 1983. Plaintiff shall be required to either file an amended complaint, or notify the court of his willingness to proceed only on the cognizable excessive force and retaliation claims. Should Plaintiff choose to proceed only on the cognizable claims, the court will begin the process to initiate service upon defendants Scalia and Huerta by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Plaintiff is granted leave to file

///

an amended complaint within thirty days.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, <u>Iqbal</u>, 556 U.S. at 678; <u>Jones</u>, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  <u>Jones</u>, 297 F.3d at 934 (emphasis added).  Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.  Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on June 4, 2014.

Plaintiff is advised that an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

(1)      File a First Amended Complaint curing the deficiencies identified in this order, or

///

(2)      Notify the court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the excessive force claims against defendants Scalia and Huerta and the retaliation claim against defendant Scalia;

3.      Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-00130-GSA-PC;

4.      Plaintiff's request for the appointment of counsel is DENIED, without prejudice; and

5.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:  **August 31, 2017**            **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE