UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY WILLIAM CORTINAS,<br><br>    Plaintiff,<br><br>    vs.<br><br>M. HUERTA, et al.,<br><br>    Defendants. | 1:17-cv-00130-AWI-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT SCALIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE TO EXHAUST BE GRANTED**<br>**(ECF No. 24.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I. BACKGROUND

Larry William Cortinas ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the original Complaint, filed on January 30, 2017, against defendants C/O J. Scalia and C/O M. Huerta for use of excessive force in violation of the Eighth Amendment, and against defendant C/O J. Scalia for retaliation in violation of the First Amendment. (ECF No. 1.)

On January 10, 2018, defendant Scalia ("Defendant") filed a motion for partial summary judgment based on Plaintiff's failure to exhaust administrative remedies for the retaliation claim in this case. (ECF No. 24.) On January 30, 2018, Plaintiff filed an opposition

1

to the motion.[1]  (ECF No. 26.)  On February 6, 2018, Defendant Scalia filed a reply.  (ECF No. 28.)  The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion should be granted.

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff is presently incarcerated at Mule Creek State Prison in Ione, California.  The events at issue in the Complaint allegedly occurred at Corcoran State Prison in Corcoran California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).

Plaintiff's allegations follow:

On December 31, 2014, at approximately 10:00 a.m., C/O Huerta ordered Plaintiff to exit his cell so his cable box could be fixed.  C/O Huerta handcuffed Plaintiff per policy, then escorted him roughly 20 feet to the shower.  The handcuffs were left on.  After about 10 minutes, C/O Huerta and C/O Scalia ordered Plaintiff to back out of the shower.  C/O Huerta placed a "controlled arm bar hold[, g]ripping both my thumbs."  (ECF No. 1 at 4.)  As Plaintiff approached his cell's open door, C/O Scalia and C/O Huerta slammed Plaintiff into the wall.  C/O Huerta applied his estimated 280 pounds into Plaintiff's back, while C/O Scalia pulled Plaintiff's right [leg] out from under him.  C/O Huerta landed on Plaintiff's back as Plaintiff was slammed onto the concrete floor.  C/O Scalia grabbed Plaintiff's hair and beard and slammed his face into the floor by lifting up Plaintiff's head by the hair.  C/O Scalia then placed his knee on Plaintiff's neck and pounded Plaintiff's head into the concrete floor 10 times as he said, "You like this."  (ECF No. 1 at 5.)  After the tenth time Plaintiff lost consciousness.  Plaintiff had a lemon-size knot on his left temple, a black eye, dizziness, ears ringing for two days, and vomiting.  Only due to the control tower's alertness was an alarm sounded.  For two weeks Plaintiff was denied medical treatment.  He still suffers back and neck pain.

---

[1] On December 27, 2017, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 24-1.)

Between July 25, 2014, and October 18, 2014, Plaintiff wrote several complaints and 602 appeals against C/O Scalia about Scalia's abuse of mentally ill prisoners. During this time C/O Scalia was Plaintiff's legal runner. All legal work was turned over to C/O Scalia for copies and mailing. C/O Scalia warned Plaintiff to mind his own business, or else. Plaintiff informed both Lt. Ruiz and Sgt. Randolph of the threats made by C/O Scalia. In October 2014, during a 602 appeal, Lt. Ruiz and Sgt. Randolph were present when Lt. Ruiz stated, "I do not get involved in personal conflict, Cortinas. Just do as C/O Scalia says. Turn away from stuff that does not concern you." (ECF No. 1 at 6.) Plaintiff responded, "How can you stand by while C/O Scalia pepper sprays Mexicans in holding telephone booth size cages? These guys are seriously ill. Do not speak English. Yet for no reason he f****s them up for sport. It's wrong." (ECF No. 1 at 6.) Yet Lt. Ruiz and Sgt. Randolph left Plaintiff in harm's way. Plaintiff wrote to the Director of CDCR, who then sent the letters to the Warden, who gave them to Lt. Ruiz, who interviewed Plaintiff with Sgt. Randolph present. These letters are in Plaintiff's C-file. Lt. Ruiz and Sgt. Randolph left Plaintiff in harm's way and Plaintiff was injured by C/O Huerta and C/O Scalia on December 31, 2014. This was retaliation for using CDCR's appeals system and for Plaintiff's complaints to Lt. Ruiz and Sgt. Randolph.

Plaintiff requests monetary damages and injunctive relief.

### III. SUMMARY JUDGMENT BASED ON EXHAUSTION

**A.  Legal Standards**

**1.  Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct.

1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. Id.

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Jones, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id; Griffin, 557 F.3d at 1120; see also Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case "[t]he California prison system's requirements define the boundaries of proper exhaustion." Marella, 568 F.3d at 1027).

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca ("Albino II"), 747 F.3d 1162, 1172-73 (9th Cir. 2014). When an inmate's

administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance). In such a case, "the inmate cannot pursue the necessary sequence of appeals." Sapp, 623 F.3d at 823.

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002); see also Cal. Code Regs. tit. 15, § 3084.1(b) (explaining that a cancellation or rejection of an inmate's appeal "does not exhaust administrative remedies"). However, a prisoner need not "press on to exhaust further levels of review once he has received all 'available' remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available." Brown, 422 F.3d at 936 (citing Booth, 532 U.S. at 736–739; see also Finley v. Skolnik, 616 Fed. Appx. 263, 264 (9th Cir. 2012) (Reversing dismissal for failure to exhaust).

In submitting an inmate grievance, California regulations require a prisoner to "list all staff members involved" and to "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). However, the Ninth Circuit has recently held that "a prisoner exhausts such administrative remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016); see also Franklin v. Foulk, 2017 WL 784894, at *4-5 (E.D. Cal. Mar. 1, 2017); Franklin v. Lewis, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate

grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. Reyes, 810 F.3d at 958; Foulk, 2017 WL 784894, at *4 ("[T]he court in Reyes found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit—that the plaintiff was wrongfully denied pain medication."); Lewis, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); Grigsby v. Munguia, No. 2:14-cv-0789 GAB AC P, 2016 WL 900197, at *11-12 (E.D. Cal. Mar. 9, 2016); see also Bulkin v. Ochoa, 2016 WL 1267265, at *1-2 (E.D. Cal. Mar. 31, 2016); see also McClure v. Chen, 246 F.Supp.3d 1286, 1292-94 (E.D. Cal. Mar. 28, 2017).

Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." Reyes, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); McClure, 246 F.Supp 3d at 1293-94 (remedies exhausted even though doctors not named in appeal; prison was placed on notice)).

### 2. California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs.

///

tit. 15, § 3084.1(a). The process is initiated by submitting a CDCR Form 602. <u>Id.</u> at § 3084.2(a).

California prisoners are required to submit appeals within thirty calendar days of the event being appealed, and the process is initiated by submission of the appeal at the first level. <u>Id.</u> at §§ 3084.7(a), 3084.8(c). Three levels of appeal are involved, including the first level, second level, and third level. <u>Id.</u> at § 3084.7. The third level of review exhausts administrative remedies. <u>Id.</u> at § 3084.7(d)(3). A final decision at the third level[2] of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). <u>Lira v. Herrera</u>, 427 F.3d 1164, 1166 (9th Cir. 2005). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. <u>Woodford</u>, 548 U.S. at 85 (2006); <u>McKinney</u>, 311 F.3d. at 1199-1201.

### 3. <u>Motion for Summary Judgment for Failure to Exhaust</u>

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. <u>Jones</u>, 549 U.S. at 216; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the Ninth Circuit issued a decision overruling <u>Wyatt</u> with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). <u>Albino II</u>, 747 F.3d at 1168–69. Following the decision in <u>Albino II</u>, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[3] or (2) a motion for summary judgment under Rule 56. <u>Id.</u> If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). <u>Jones</u>, 549 U.S. at 223–24; <u>Lira</u>, 427 F.3d at 1175–76.

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[2] The third level of review is sometimes known as the Director's level.

[3] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." <u>Albino II</u>, 747 F.3d at 1162.

7

R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate in order to rule on this motion.

**B.     Undisputed Facts**

Unless otherwise noted, the following facts are undisputed by the parties, or as determined by the court based on a thorough review of the record.[4]

1. Plaintiff Larry William Cortinas was an inmate incarcerated with the California Department of Corrections and Rehabilitation (CDCR) at California State Prison, Corcoran from at least July 2014 to January 30, 2017. (Complaint at 1, 3, ECF No. 1.)

2. Cortinas's complaint alleges that from July to October 2014, Cortinas filed several administrative appeals alleging that Defendant Scalia was involved in "abuse of mentally ill prisoner." (Complaint at 4, ECF No. 1.)

3. Cortinas further alleges that Scalia knew about Cortinas's filing of administrative appeals and warned Cortinas to mind his own business "or else." (Complaint at 4, ECF No. 1.)

4. CDCR provides its inmates with a comprehensive administrative appeals process in which inmates may appeal any decision, action, condition, policy or omission, made by the Department or its staff, which the inmate believes has had a material adverse effect on their welfare. (Goree Decl. ¶ 3; Voong Decl. ¶ 3.)

5. The non-healthcare appeals process has three levels, and a final decision at the third level exhausts administrative remedies. (Goree Decl. ¶ 3; Voong Decl. ¶ 3.)

6. Cortinas filed this lawsuit on or before January 30, 2017. (Complaint at 1, ECF No. 1.)

7. From October 1, 2014 to January 30, 2017, Cortinas filed fifty-three non-healthcare inmate appeals. (Goree Decl. ¶¶ 15-18 & Ex. J.)

///

---

[4] These facts are taken from Defendant Scalia's Statement of Undisputed Material Facts, ECF No. 24-3. The court has considered all declarations and exhibits submitted in support of each statement. Plaintiff however, failed to properly address Defendant's statement of undisputed facts. Local Rule 260(b). Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion. Id; Fed. R. Civ. P. 56(e)(2).

8. Eight of the appeals Cortinas filed between October 1, 2014 and January 30, 2017 were exhausted through the third level. Their log numbers are: 14-07337, 14-08084, 15-00360, 15-01522, 15-02052, 15-04720, 16-00744, 16-01936. (Goree Decl. ¶ 16; Voong Decl. ¶ 10.)

9. None of these eight appeals that Cortinas filed between October 1, 2014 and January 30, 2017, that were exhausted through the third level, described any alleged threat that Cortinas should mind his own business "or else." (Goree Decl. ¶ 16 & Exs. K-R; Voong Decl. ¶ 10 & Exs. B-I.)

10. Cortinas alleges he exhausted his administrative remedies by filing a grievance that was denied at each level because "information regarding staff assaults is not shared with prisoners." (Complaint at 2, ECF No. 1.)

11. Appeal log number 15-00360 describes an incident on December 31, 2014, and was denied at the third level. The second-level response to appeal log number 15-00360 states that "staff personnel matters are confidential in nature." (Goree Decl. ¶ 16; Staff Complaint Response 2 (Goree Decl. Ex. M at 7.); Voong Decl. ¶ 10; Third Level Appeal Response 1 (Voong Decl. Ex. D at 2.)

12. Appeal log no. 15-00360 states, "c/o Scalia is aware of my complaints about how he has assaulted mentally ill prisoners me included as a method of intimidation." (Inmate/Parolee Appeal Log No. 15-00360 at 3 (Goree Decl. Ex. M at 4.))

13. Appeal log no. 15-00360 does not mention Cortinas's allegation that Defendant Scalia told Cortinas to mind his own business "or else." (Inmate/Parolee Appeal Log No. 15-00360 at 1-4 (Goree Decl. Ex. M at 2-5; Voong Decl. Ex. D at 4-7.))

14. Forty-five of the appeals Cortinas filed between October 1, 2014 and January 30, 2016 never reached the third level. (Goree Decl. ¶¶ 16-18; Voong Decl. ¶ 10.)

15. Between October 1, 2014 and January 30, 2017, the Corcoran Appeals Coordinator's office reviewed eight appeals submitted by Larry Cortinas that did not reach the third level. Their log numbers are: 15-00419, 15-02974, 15-05883, 16-00603, 16-01557, 16-05437, 16-05793, 17-00205. (Goree Decl. ¶ 17.)

16. Cortinas had the opportunity to pursue appeal numbers 15-00419, 15-02974, 15-05883, 16-00603, 16-01557, 16-05437, 16-05793, and 17-00205 to the third level but did not do so. (Goree Decl. ¶ 17.)

17. Appeal log numbers 15-00419, 15-02974, 15-05883, 16-00603, 16-01557, 16-05437, 16-05793, and 17-00205 do not mention Cortinas's allegation that Defendant Scalia told Cortinas to mind his own business "or else." (Inmate/Parolee Appeal log numbers 15-00419, 15-02974, 15-05883, 16-00603, 16-01557, 16-05437, 16-05793, and 17-00205 (Goree Decl. Exs. S-Z.))

18. Between October 1, 2014 and January 30, 2017, the Corcoran Appeals Coordinator's office screened out thirty-seven appeals submitted by Plaintiff Cortinas. Their log numbers are: 14-06873, 14-06891, 14-07457, 14-07492, 14-07859, 15-01040, 15-01400, 15-01563, 15-02502, 15-02623, 15-02954, 15-03176, 15-03998, 15-04388, 15-04530, 15-05315, 15-05457, 15-05782, 15-06151, 15-06396, 15-06870, 15-07412, 15-07595, 16-02002, 16-02295, 16-03144, 16-03182, 16-03658, 16-03839, 16-03856, 16-04121, 16-04658, 16-04758, 16-05141, 16-05785, 16-05961, and 17-00269. (Goree Decl. ¶ 18.)

19. For rejected appeals log numbers 14-06873, 14-06891, 14-07457, 14-07492, 15-01040, 15-01400, 15-01563, 15-02502, 15-02623, 15-02954, 15-03176, 15-03998, 15-04388, 15-04530, 15-05457, 15-05782, 15-06151, 15-06396, 15-07595, 16-02295, 16-03144, 16-03658, 16-03839, 16-03856, 16-04121, 16-04658, 16-04758, 16-05141, 16-05785, 16-05961, and 17-00269, Cortinas had the opportunity to correct the issues for which the appeals were rejected and refile within thirty days of the last rejection. Cortinas did not do so. (Goree Decl. ¶ 18.)

20. For cancelled appeals log numbers 14-07859, 15-05315, 15-06870, 15-07412, 16-02002, and 16-03182, Cortinas had the opportunity to appeal the cancellations. Cortinas did not do so. (Goree Decl. ¶ 18.)

///

21. Screened out appeals numbered 14-07859, 15-06870, 15-07412, 16-03144, 16-03182, 16-03658, 16-03839, 16-03856, 16-04121, 16-04658, 16-04758, 16-05141, 16-05785, 16-05961, 17-00269, and 16-02295 do not mention Cortinas's allegation that Defendant Scalia told Cortinas to mind his own business "or else." ( Inmate/Parolee Appeal Log Nos. 14-07859, 15-06870, 15-07412, 16-03144, 16-03182, 16-03658, 16-03839, 16-03856, 16-04121, 16-04658, 16-04758, 16-05141, 16-05785, 16-05961, 17-00269, and 16-02295.))  (Goree Decl. Exs. BB-QQ.))

C. **Defendant's Motion**

Defendant argues that Plaintiff did not exhaust his available remedies for his retaliation claim against defendant Scalia. Defendant asserts that there is no dispute that Plaintiff had an administrative remedy available to him provided by the CDCR. (Goree Decl., ECF No. 24-5 ¶¶ 3, 15-18 & Exh. J; Voong Decl., ECF No. 24-4 ¶ 3.) Defendant's evidence shows that Plaintiff filed fifty-three non-healthcare inmate appeals during the requisite time period between October 2014 and January 30, 2017. (Goree Decl., ECF No. 24-5 ¶¶ 15-18 & Exh, J.)

As for the appeal Plaintiff refers to in the Complaint, log no. 15-00360, Defendant asserts that it was completed through the third level of review but did not address the retaliation claim in this case. (Goree Decl., ECF No. 24-5 ¶ 16; Staff Complaint Response 2 (Goree Decl., Exh. M, ECF No. 24-5 at 44); Voong Decl., ECF No. 24-4 ¶ 10; Third Level Response 1 (Voong Decl., ECF No. 24-4 , Exh. D, ECF No. 24-4 at 63); Inmate/Parolee Appeal Log No. 15-00360 at 3 (Goree Decl. Exh. M, ECF No. 24-5 at 41). While the appeal states, "c/o Scalia is aware of my complaints about how he assaulted mentally ill prisoners me included as a method of intimidation," Defendant asserts that the appeal does not mention the retaliation alleged in the Complaint – Scalia's supposed statement that Plaintiff must stop filing grievances against him, "or else." (Inmate/Parolee Appeal log no. 15-00360 (Goree Decl., Exh. M, ECF No. 24-5 at 41.))[5]

---

[5] All page numbers cited herein are assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials.

Defendant also provides evidence that none of Plaintiff's seven other appeals that reached the third level of review between the time of the alleged retaliation (on or around October 2014) and the filing of the Complaint (January 30, 2017) described any alleged threat by Defendant that Plaintiff should mind his own business "or else." (Goree Decl., ECF No. 24-5 ¶ 16 & Exhs. K-R; Voong Decl., ECF No. 24-4 ¶ 10 & Exhs. B-I.)

Further, Defendant shows that none of the remaining forty-five grievances reached the third level of review and therefore were not exhausted. (Goree Decl., ECF No. 24-5 ¶¶16-18.) Eight were reviewed at the first or second level of review but were not pursued by Plaintiff through the final level, and none of the eight appeals address Plaintiff's retaliation claim. (Goree Decl., ECF No. 24-5 ¶17; Inmate Parolee Appeal log numbers 15-00419, 15-02974, 15-05883, 16-00603, 16-01557, 16-05437, 16-05793, and 17-00205 (Goree Decl., ECF No. 24-5, Exhs. S-Z).

Finally, Defendant asserts that the remaining thirty-seven appeals Plaintiff filed during the requisite time period were screened out (that is, cancelled or rejected) for failure to comply with CDCR regulations. (Goree Decl., ECF No. 24-5 ¶ 18.) Of the rejected appeals, Defendant asserts that Plaintiff did not pursue his option to correct the identified issues and refile the appeal within thirty days under California Code of Regulations § 3084.6(a)(2), and therefore did not exhaust his remedies. (Goree Decl., ECF No. 24-5 ¶ 18.) Of the cancelled appeals, Defendant asserts that Plaintiff did not pursue his option under California Code of Regulations § 3084.6(e) to separately appeal the cancellations, and therefore did not exhaust his remedies. (Goree Decl., ECF No. 24-5 ¶ 18.) In addition, although it was not CDCR policy to maintain copies of screened out appeals in 2014-15, CDCR has copies of sixteen of them, and none of the sixteen mentions Scalia's alleged threat to Plaintiff. (Goree Decl., ECF No. 24-5, Exhs. BB-QQ (Inmate/Parolee Appeal log nos. 14-07859, 15-06870, 15-07412, 16-03144, 16-03812, 16-03658, 16-03839, 16-03856, 16-04121, 16-04658, 16-04758, 16-05141, 16-05785, 16-05961, 17-00269, and 16-02295.))

///

///

### D. Defendant's Burden

The court finds that Defendant has carried his initial burden to prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust the available remedies for his retaliation claim, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

### E. Plaintiff's Opposition

Plaintiff claims that he exhausted his administrative remedy for the retaliation claim on September 11, 2015, when appeal no. 15057942 was denied at the third level of review. Plaintiff declares that appeal no. 15057942 states, "This action was done to me in front of my cell door, as a result and warning to drop the lawsuit I filed against Joe Scalia in Federal Court 1:14-cv-02015 on December 19, 2014. (Pltf's Decl., ECF No. 26-1 ¶ 2.) Plaintiff also declares that in the months prior to this reprisal by Defendant he wrote to the California Attorney General's Office, the Inspector General's Office, and the Director of the CDCR, notifying them of the threats of reprisal against him by Defendant. Plaintiff claims that these records are at said agencies and in Plaintiff's C-file.

### F. Discussion

Defendant replies that Plaintiff's appeal no. 15057942 did not address the retaliation claim stated in Plaintiff's Complaint, but instead addresses a wholly separate incident.[6] Defendant asserts that appeal no. 15057942 is a healthcare appeal that addresses the events of December 31, 2014, but does not address Defendant's alleged October 2014 threat that is the subject of Plaintiff's retaliation claim in the Complaint.

///
///
///

---

[6] Defendant states that Plaintiff filed a copy of grievance no. 15057942 with his papers opposing Defendants' motion for protective order, ECF No. 27. (ECF No. 28 at 3, fn.2.)

### ***Plaintiff's Claims in the Complaint***

Plaintiff brings two claims in the Complaint, which he titles (1) "freedom from cruel and unusual punishment," and (2) "access to courts, free speech, and freedom from cruel and unusual punishment." (Comp., ECF No. 1 at 3-4.) Plaintiff's first claim reads as follows:

> At or about 10AM on December 31, 2014 correctional officer M. Huerta ordered me to exit cell 201 of unit 4 on Facility 3A, located [at] C.S.P. Corcoran, so my cable box could be fixed. Correctional officer M. Huerta handcuffed me per policy, then escorted me the roughly 20 feet to the upper tier A section shower. Once inside the shower, the handcuffs were left on. About ten minutes passed, when Correctional Officers M. Huerta and J. Scalia ordered me to back out of the shower. Correctional Officer M. Huerta placed a controlled arm bar hold, gripping both my thumbs. As I approached my cell's open door, Correctional Officers J. Scalia and M. Huerta slammed me into the wall. C/O M. Huerta applied his estimated 280 pounds into my back. While C/O J. Scalia pulled my right [leg] out from under me, C/O M. Huerta landed upon my lower back. As I was slammed into the concrete floor, C/O J. Scalia grabbed my head hair and beard. C/O J. Scalia then slammed my face into the floor. C/O J. Scalia did this by lifting up my head by the hair, then using his knee upon my neck and head, [and] pounded my head 10 times into the concrete floor as he said, "You like this." After the 10th time I lost awareness. I had a lemon size knot on the left temple area, a black eye, dizziness, ears ringing for two days, and vomiting. Only due to the control tower's alertness was an alarm sounded. For two weeks I was denied medical treatment. I still suffer back [and] neck pain due to this matter which should have been avoided.

(ECF No. 1 at 3-5.)

Plaintiff's second claim reads as follows;

> July 25, 2014 up through October 18, 2014, I wrote several complaints, plus several 602 appeals upon C/O J. Scalia about his (Scalia) abuse of mentally ill prisoners. During this time C/O Scalia was my unit Legal Runner. All legal work was turned in to C/O Scalia for copies and mailing. C/O Scalia warned me to mind my own business, or else. I informed both Correctional Lieutenant R. Ruiz and Correctional Sergeant A. Randolph of the threats made by C/O Scalia. In October 2014 during a 602 appeal Lieutenant R. Ruiz and Sergeant A. Randolph [were] present when Lt. R. Ruiz stated, "I do not get involved in personal conflicts, Cortinas. Just do as C/O Scalia says. Turn away from stuff that does not concern you." I responded, "How can you stand by while C/O Scalia pepper sprays Mexicans in holding telephone booth size cages? These guys are seriously ill [and] do not speak English. Yet for no reason, he f***s them up for sport. It's wrong." Yet Lieutenant Ruiz and Sergeant Randolph left me in harm's way. I wrote the Director of CDCR, who then sent the letters to the Warden, who gave them to Lt. R. Ruiz, who would interview me with Sergeant A. Randolph present. These letters are in my C-File. These two people left me in harm's way, where I was physically injured by M. Huerta and J. Scalia on December 31, 2014. The retaliation over using CDCR's appeal

///

///

15

> system, plus the complaints to Lt. R. Ruiz and Sgt. A. Randolph, incorporated are the claim one statement of facts.

(ECF No. 1 at 4-6.)

In the court's screening order issued on August 31, 2017, the court found that Plaintiff stated a cognizable excessive force claim against defendants Huerta and Scalia, based on the events of December 31, 2014, and a retaliation claim against defendant Scalia, based on his threat to Plaintiff, to "mind his own business, or else," made after Plaintiff filed complaints and 602 appeals against Scalia between July 25, 2014 and October 18, 2014. (ECF No. 9 at 6-8.) The court found no other cognizable claims in the Complaint. The court specifically found that Plaintiff did not state a cognizable retaliation claim against defendant Huerta or defendant Scalia for using force against Plaintiff. (ECF No. 9 at 8 13-22.) Plaintiff was granted leave to amend the Complaint, or to notify the court of his willingness to proceed only on the claims found cognizable by the court. (ECF No. 9 at 11-13 ¶ IV.) On September 11, 2017, Plaintiff filed written notice to the court that he wished to proceed with the claims found cognizable by the court. (ECF No. 10.) Based on Plaintiff's notice, this case now proceeds on two claims, (1) for excessive force against defendants Huerta and Scalia, and (2) for retaliation against defendant Scalia based on his threat to Plaintiff to "mind his own business, or else."

Plaintiff argues that his appeal no. 15057942 exhausted his administrative remedies for his retaliation claim against defendant Scalia, because of the following statement in the appeal:

> This action was done to me in front of my cell door as a result and warning to drop the lawsuit I filed against Joe Scalia in Federal Court case # 0215 on 12-19-14.

(ECF No. 27 at 3.) However, appeal no. 15057942 does not address the retaliation claim upon which this case proceeds. Appeal no 15057942 is a healthcare appeal in which Plaintiff describes his pain symptoms following the December 14, 2014 excessive force incident, and requests medical care. (ECF No. 26 at 3-6.) Plaintiff's only reference in the appeal to retaliation is the statement quoted above, which refers to the excessive force incident. There is no other mention of retaliation in the appeal. Plaintiff requests medical treatment and monetary damages as relief in the appeal: "MRI examination neck and head, pain treatment, involuntary muscle spasms treatment [and] monetary compensation 50 thousand dollars." (ECF No. 27 at

6.) The appeal was denied at the third level of review with no mention by the reviewers of a retaliation issue. (ECF No. 27 at 8.) Therefore, the court finds that Plaintiff's appeal, no. 15057942 did not exhaust his administrative remedies for his retaliation claim.

Even if the court decided that Plaintiff's mention of retaliation in appeal no. 15057942 was sufficient to place prison officials on notice that the excessive force on December 31, 2014, was retaliatory, the appeal does not alert "the prison to the nature of the wrong for which redress is sought" in this case, Sapp, 623 F.3d at 824, with respect to Plaintiff's claim that defendant Scalia made a threat to Plaintiff to "mind his own business, or else." Moreover, Plaintiff affirmatively chose not to proceed with his claim that the excessive force incident was retaliatory when he notified the court in writing that he wished to proceed only on the claims found cognizable by the court. Even "draw[ing] all reasonable inferences in the light most favorable to [Plaintiff]," Comite de Jornaleros de Redondo Beach, 657 F.3d at 942, the court cannot find that Plaintiff's scant mention of one retaliation incident is sufficient to notify officials of another retaliation incident.

Defendant also argues that Plaintiff's letters to the CDCR Director, the Attorney General's Office, and the Inspector General's Office are not sufficient to exhaust his remedies for the retaliation claim as Plaintiff was required to go through CDCR's grievance process before filing suit. Defendant argues that CDCR's available process requires that Plaintiff comply with CDCR's deadlines and other critical procedural rules, and his letters or any other avenues of relief cannot exhaust his administrative remedies. The court concurs that Plaintiff's letters to other agencies are not part of the CDCR's available appeals process and do not satisfy the requirement to exhaust Plaintiff's remedies. "The California prison system's requirements 'define the boundaries of proper exhaustion,'" Marella, 568 F.3d at 1027, and letters to agencies or the Warden are not included as part of the CDCR's appeals process, Cal. Code Regs. tit. 15, § 3084, *et seq.* California prisoners are required to use and submit a CDCR Form 602, Inmate/Parolee Appeal, to initiate the appeals process. Id. at § 3084.2(a). Accordingly, none of Plaintiff's letters are evidence of exhaustion of Plaintiff's administrative remedies. See Woodford, 548 U.S. at 91, 93 (exhaustion under the PLRA requires "compliance with an

agency's deadlines and other critical procedural rules"); Wilson v. Wann, 2008 WL 4166886, *2 (E.D. Cal. Sept. 8, 2008) (letters to Internal Affairs and warden were insufficient to show exhaustion); see also Lees v. Felker, 2009 WL 2824862, *5 (E.D. Cal. Sept.1, 2009) (letter to warden is not an alternative method to the inmate grievance process for exhausting administrative remedies).

## IV. CONCLUSION AND RECOMMENDATIONS

The court finds, based on the record before it, that Plaintiff failed to exhaust his available administrative remedies for his retaliation claim against defendant Scalia concerning defendant Scalia's threat to Plaintiff, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Therefore, Defendant's motion for partial summary judgment, filed on December 27, 2017, should be granted; Plaintiff's retaliation claim should be dismissed without prejudice; and the case should proceed only on Plaintiff's excessive force claims against defendants Huerta and Scalia.

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Scalia's motion for partial summary judgment based on Plaintiff's failure to exhaust administrative remedies, filed on December 27, 2017, be GRANTED;
2. Plaintiff's retaliation claim against defendant Scalia be DISMISSED without prejudice;
3. This case proceed only on Plaintiff's excessive force claims against defendants Huerta and Scalia; and
4. This case be referred back to the Magistrate Judge for further proceedings, including the reopening of discovery.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be

served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated: **June 10, 2018**            **/s/ Gary S. Austin**
                                                                      UNITED STATES MAGISTRATE JUDGE