UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY WILLIAM CORTINAS,<br><br>    Plaintiff,<br><br>    vs.<br><br>M. HUERTA, et al.,<br><br>    Defendants. | 1:17-cv-00130-AWI-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED (ECF No. 51.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.    BACKGROUND**

Larry William Cortinas ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with the original Complaint, filed on January 30, 2017, against Correctional Officer (C/O) J. Scalia, and C/O M. Huerta ("Defendants") for use of excessive force in violation of the Eighth Amendment.[1] (ECF No. 1.)

---

[1] On September 13, 2017, the court issued an order for this case to proceed only against defendants Scalia and Huerta for use of excessive force and defendant Scalia for retaliation, and dismissing all other claims and defendants from this action based on Plaintiff's failure to state a claim. (ECF No. 11.) On August 20, 2018, the court dismissed Plaintiff's retaliation claim against defendant Scalia based on Plaintiff's failure to exhaust administrative remedies. (ECF No. 37.)

1

On July 24, 2019, Defendants filed a motion for summary judgment on the ground that the undisputed facts show that Plaintiff's claims are barred under the favorable termination doctrine in Heck v. Humphrey, 512 U.S. 477, 486–87 (1994).[2] (ECF No. 51.) On August 7, 2019, Plaintiff filed an opposition to the motion. (ECF Nos. 55-56.) On August 13, 2019, Defendants filed a reply. (ECF No. 57.) The motion is deemed submitted. Local Rule 230(*l*).

For the reasons set forth below, the court concludes that Plaintiff's case is not barred by Heck and recommends that Defendants' motion for summary judgment be denied.

## II.  SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 51-2.)

Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. PLAINTIFF'S ALLEGATIONS AT ISSUE IN THE COMPLAINT[3]

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California. The events at issue in the Complaint allegedly occurred at Corcoran State Prison in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).

///

---

[3] Plaintiff's Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

Plaintiff's allegations of excessive force follow:

On December 31, 2014, at approximately 10:00 a.m., C/O Huerta ordered Plaintiff to exit his cell so his cable box could be fixed. C/O Huerta handcuffed Plaintiff per policy, then escorted him roughly 20 feet to the shower. The handcuffs were left on. After about 10 minutes, C/O Huerta and C/O Scalia ordered Plaintiff to back out of the shower. C/O Huerta placed a "controlled arm bar hold[, g]ripping both my thumbs." (ECF No. 1 at 4.) As Plaintiff approached his cell's open door, C/O Scalia and C/O Huerta slammed Plaintiff into the wall. C/O Huerta applied his estimated 280 pounds into Plaintiff's back, while C/O Scalia pulled Plaintiff's right [leg] out from under him. C/O Huerta landed on Plaintiff's back as Plaintiff was slammed onto the concrete floor. C/O Scalia grabbed Plaintiff's hair and beard and slammed his face into the floor by lifting up Plaintiff's head by the hair. C/O Scalia then placed his knee on Plaintiff's neck and pounded Plaintiff's head into the concrete floor 10 times as he said, "You like this." (ECF No. 1 at 5.) After the tenth time Plaintiff lost consciousness. He had a lemon-size knot on his left temple, a black eye, dizziness, ears ringing for two days, and vomiting. Only due to the control tower's alertness was an alarm sounded. For two weeks Plaintiff was denied medical treatment. He still suffers back and neck pain.

Plaintiff requests monetary damages and injunctive relief.

## IV. LEGAL STANDARDS

### A. Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### B. Heck v. Humphrey[4] – Favorable Termination Rule

"A state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his confinement,' because such an action lies at the 'core of habeas corpus.'" Simpson v. Thomas, 528 F.3d 685, 693 (9th Cir. 2008) (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)). Thus, where a § 1983 action seeking damages alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalidated on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding. Heck, 512 U.S. at 438-37. This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. Balisok, 520 U.S. at 646-48 (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (explaining that "a state prisoner's § 1983 action is barred (absent prior

---

[4] 512 U.S. 477 (1994).

invalidation) no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) if success in that action would necessarily demonstrate the invalidity of confinement or its duration" (emphasis omitted)). Stated another way, a § 1983 claim is barred if the "plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (citing Heck, 512 U.S. at 487 n. 6). However, when the § 1983 claim does not necessarily implicate the underlying disciplinary action (or criminal conviction), it may proceed. See Muhammad v. Close, 540 U.S. 749, 754-55 (2004).

### C. Sham Declaration

"'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" Yeager v. Bowlin, 693 F.3d 1076, 1081 (9th Cir. 2012) (citing Van Asdale v. International Game Technology, 577 F.3d at 998 (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). This sham affidavit rule prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Yeager, 693 F.3d at 1081 (quoting Kennedy, 952 F.2d at 266 (internal quotation marks omitted); see also Van Asdale, 577 F.3d at 998 (stating that some form of the sham affidavit rule is necessary to maintain the principle that summary judgment is an integral part of the federal rules)). But the sham affidavit rule "'should be applied with caution'" because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. Van Asdale, 577 F.3d at 998 (quoting Sch. Dist. No. 1J v. AC andS, Inc., 5 F.3d 1255, 1264 (9th Cir.1993)). In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Van Asdale, 557 F.3d at 998–99.

Newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham. Yeager, 693 F.3d at 1081 (citing

see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806–07, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (stating the general rule that parties may explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable)). "'[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.'" (Yeager, 693 F.3d at 1081 (quoting Van Asdale, 577 F.3d at 999 (quoting Messick v. Horizon Indus., 62 F.3d 1227, 1231 (9th Cir. 1995) (internal quotation marks omitted).

## V. DEFENDANTS' STATEMENT OF UNDISPUTED FACTS (DUF)[5]

Defendants submitted the following Statement of Undisputed Facts. (ECF No. 51-3.)

|   | Defendants' Undisputed Facts | Evidence |
|---|---|---|
| 1. | Plaintiff Larry William Cortinas (CDCR No. P-09908) is a CDCR inmate who was housed at CSP-Corcoran on December 31, 2014. | Compl. 3, ECF No. 1. |
| 2. | Defendants Huerta and Scalia are CDCR correctional officers who were working at CSP-Corcoran on December 31, 2014. | Compl. 3-4, ECF No. 1. |
| 3. | On December 31, 2014, Defendants Huerta and Scalia escorted Cortinas toward Cortinas's cell. | Compl. 3-4, ECF No. 1; Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |
| 4. | A Rules Violation Report regarding the December 31, 2014 incident states that Cortinas began resisting Defendants' escort by pushing back toward officer Huerta. | Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |

---

[5] Plaintiff failed to properly address Defendants' statement of undisputed facts, as required by Local Rule 260(b). Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion. Id.; Fed. R. Civ. P. 56(e)(2). However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

7

|  | Defendants' Undisputed Facts | Evidence |
|---|---|---|
| 5. | A Rules Violation Report regarding the December 31, 2014 incident states that officer Huerta ordered Cortinas to stop resisting but Cortinas continued resisting and attempted to turn toward the officers. | Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |
| 6. | On December 31, 2014, officers took physical control of inmate Cortinas and forced him to the ground. | Compl. 4, ECF No. 1; Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |
| 7. | A Rules Violation Report regarding the December 31, 2014 incident states that as Cortinas was going to the ground, it appeared he hit his head on the curb of the tier. | Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |
| 8. | During the December 31, 2014 incident, an alarm was sounded and additional CDCR staff members arrived, who took over custody of Cortinas. | Compl. 5, ECF No. 1; Rules Violation Report Log No. 3AAS-14-12-010 at 1 (Borunda Decl. Ex. A). |
| 9. | On January 14, 2015, the investigation into the December 31, 2014 incident involving Plaintiff Cortinas was concluded. | Rules Violation Report Log No. 3AAS-14-12-010 at 2 (Borunda Decl. Ex. A). |
| 10. | Cortinas was charged with "Willfully Resisting a Peace Officer Resulting in the Use of Force" in Rules Violation Report (RVR) log number 3AAS-14-12-010. | Rules Violation Report Log No. 3AAS-14-12-010 at 2-3 (Borunda Decl. Ex. A). |
| 11. | On February 13, 2015, Cortinas appeared before the Senior Hearing Officer (SHO) for adjudication of the RVR. Cortinas pled guilty, and was found guilty of "Willfully Resisting a Peace Officer Resulting in the Use of Force." | Rules Violation Report Log No. 3AAS-14-12-010 at 3 (Borunda Decl. Ex. A); Borunda Decl. ¶ 5; Cortinas Dep. at 54:13-55:07 (Duggan Decl. Ex. B). |
| 12. | Cortinas was assessed 90 days credit forfeiture and ten day loss of yard privileges in RVR log number 3AAS-14-12-010. | Rules Violation Report Log No. 3AAS-14-12-010 at 3 (Borunda Decl. Ex. A); Borunda Decl. ¶ 5; Cortinas Dep. at 54:14-55:25 (Duggan Decl. Ex. B). |

|  | Defendants' Undisputed Facts | Evidence |
|---|---|---|
| 13. | The credits Cortinas lost in RVR log number 3AAS-14-12-010 have not been restored. | Borunda Decl. ¶ 6; Cortinas Dep. at 55:22-56:3 (Duggan Decl. Ex. B). |
| 14. | Cortinas asserts he did not push back into officers on December 31, 2014, did not turn toward officers, and did not resist the escort. | Compl. 4, ECF No. 1; Transcript of Cortinas Dep. at 51:25-52:24, 55:1-56:10 (Duggan Decl. Ex. B.) |
| 15. | Cortinas asserts that on December 31, 2014, Defendants attacked him without any physical provocation due to earlier verbal insults Cortinas directed toward officer Scalia. | Cortinas Dep. at 28:8-29:3 (Duggan Decl. Ex. B). |
| 16. | Cortinas asserts that Defendants slammed Cortinas into the wall, took him to the ground and that Defendant Scalia slammed his head into the ground ten times. | Compl. 4, ECF No. 1. |
| 17. | Cortinas's complaint states "Correctional officer(s) M. Huerta and J. Scalia ordered me to back out of the shower . . . as I approached my cell's open door, correctional officer J. Scalia and M. Huerta slammed me into the wall." | Compl. 4, ECF No. 1. |

| | Defendants' Undisputed Facts | Evidence |
|---|---|---|
| 18. | At his deposition, Cortinas testified as follows:<br>"Q. So, yeah, in that paragraph, it says that as you were walking back from the shower, you turned toward Officer Huerta.<br>A. Yeah, that's not true. In fact, that would have been impossible, because he had my thumbs and had a bar, an arm underneath my arm, locking me in a position that there is no way I could have turned on him without being tossed over the rail or some other way.<br>. . .<br>Q. There in the second paragraph, it says, 'Suddenly, Cortinas turned in an attempt to break free from the escort toward Officer Huerta.'<br>Did you do that?<br>A. Negative. No.<br>. . .<br>Q. There, it says in the first paragraph, 'Cortinas began resisting my escort by pushing himself back into me.'<br>Did you do that?<br>A. No. | Cortinas Dep. at 51:25-52:07, 52:20-24, 56:6-10 (Duggan Decl. Ex. B). |
| 19. | At his deposition, Cortinas testified that he only pled guilty in rules violation proceeding 3AAS-14-12-010 because the punishment offered was "very minimal." | Cortinas Dep. at 55:01-13 (Duggan Decl. Ex. B). |

## VI. DEFENDANTS' MOTION

Defendants' evidence includes Plaintiff's allegations in his Complaint; the declarations of R. Borunda (Correctional Case Records Manager) and Jeremy Duggan (Deputy Attorney General), Plaintiff's Rules Violation Report (RVR) Log No. 3AAS-14-12-010, excerpts from Plaintiff's Deposition Transcript of December 5, 2018, and court records.

Defendants argue that Plaintiff's case is Heck-barred because at his disciplinary hearing he pled guilty and was found guilty of resisting officers and penalized with the loss of 90 good-time credits, which affected the length of his confinement and have not been restored. (RVR Log No. 3AAS-14-12-010 at 3 (Borunda Decl. ¶¶ 5, 6 & Ex. A)); Cortinas Dep. at 54:13-56:3 (Duggan Decl. Ex. B.)) In the Complaint, Plaintiff asserts that he did not resist officers and that officers had no justification to employ any force against him. (Compl. 4, ECF No. 1; Transcript of Cortinas

Dep. at 51:25-52:24, 55:1-56:10 (Duggan Decl. Ex. B.)) Plaintiff claims that officers slammed him into the wall near his cell which was unprovoked. (Compl. 4, ECF No. 1.) Defendants provide evidence that at his deposition, Plaintiff contradicted his guilty plea by testifying that he did not resist Defendants:

> "Q. So, yeah, in that paragraph, it says that as you were walking back from the shower, you turned toward Officer Huerta.
>
> A. Yeah, that's not true. In fact, that would have been impossible, because he had my thumbs and had a bar, an arm underneath my arm, locking me in a position that there is no way I could have turned on him without being tossed over the rail or some other way.
>
> . . .
>
> Q. There in the second paragraph, it says, 'Suddenly, Cortinas turned in an attempt to break free from the escort toward Officer Huerta.' Did you do that?
>
> A. Negative. No.
>
> . . .
>
> Q. There, it says in the first paragraph, 'Cortinas began resisting my escort by pushing himself back into me.' Did you do that?
>
> A. No."

(Cortinas Dep. at 51:25-52:07, 52:20-24, 56:6-10 (Duggan Decl. Ex. B.))

Plaintiff attempted to explain this contradiction by testifying that he only pled guilty because the punishment offered was "very minimal."

> "Q. Did you plead guilty to willfully resisting a peace officer resulting in the use of force?
>
> A. Apparently so. And the only reason that I would have done that was because the punishment offered me in the plea deal was very minimal at that. Ten days loss of privileges, that's nothing considering you're in the hole already.
>
> . . .
>
> Q. So what you're saying is you pled guilty, but you did not, in fact, willfully resist?
>
> A. I accepted a plea agreement with the senior hearing officer for a ten-day loss of privilege. So I pled guilty instead of getting the worse[] of the two evils, which would have been 90 days loss of privilege, 90 days loss of television, 90 days loss of this, that, and the other thing.
>
> Q. You were also assessed 90 days credit forfeiture."

(Cortinas Dep. at 55:01-13 (Duggan Decl. Ex. B).

11

1  Defendants argue that Plaintiff's reason for pleading guilty does not change the fact that the Heck bar applies, because under Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003), the application of the Heck bar "turns solely" on whether a successful § 1983 action invalidates a conviction or administrative sanction. Defendants contend that a favorable ruling for Plaintiff in this § 1983 case would imply that his conviction for resisting Defendants was wrong, and therefore unless Plaintiff's guilty finding is overturned his excessive force claim is barred and should be dismissed.

**VII.    DEFENDANTS' BURDEN**

The court finds that Defendants have met their burden of demonstrating that Plaintiff's § 1983 case is barred under the favorable termination doctrine in Heck, which was extended under Edwards v. Balisok, 520 U.S. 641 (1997) to actions under § 1983 that, if successful, would necessarily demonstrate the invalidity of confinement or its duration. The burden shifts to Plaintiff to come forward with evidence showing why this case should not be dismissed as barred by Heck.

**VII.    PLAINTIFF'S POSITION**

**A.    Untimeliness**

Plaintiff argues that Defendants' motion for summary judgment, filed on July 24, 2019, should be denied as untimely because this is the second motion for summary judgment in this case, that discovery has long been closed in this matter, and no new evidence has been discovered that was not known to defense counsel in 2018, and finally, no agreement or leave of court was sought prior to its filing.

Plaintiff's arguments on this point is without merit. Defendants correctly argue that their motion for summary judgment was not untimely as it was filed on the deadline set forth in the court's order granting Plaintiff's motion to extend the deadlines in this case. (Order Granting Pltf's Motion, ECF No. 44, setting dispositive motion filing deadline as July 24, 2019).

///
///
///

**B.    Heck-bar**

Plaintiff's evidence includes his allegations in the Complaint, Plaintiff's declaration filed on August 7, 2019, testimony from Plaintiff's Deposition Transcript of December 5, 2018, and court records.

Plaintiff argues that Defendants have mis-applied the termination doctrine in Heck v. Humphrey, because Plaintiff is not challenging the findings from his disciplinary hearing. He asserts that he pled guilty, did not file an appeal, and did not seek to restore the 90 days of good-time credit.[6] Plaintiff claims that he is challenging the amount of force used on him when he was in restraints, the ten times his head was lifted and smashed into the concrete floor after he was prone on his stomach. Plaintiff asserts that when he was on the floor he was not acting in any way that could be perceived as resistance. When the correctional sergeant arrived, Officer Scalia had to be instructed to stop beating Plaintiff, and this was witnessed by at least five other correctional officers.

Plaintiff declares as follows:

> "My civil complaint is addressing the excessive force used upon [me] after I was prone upon my stomach [*sic*]. Officer Huerta was upon my back and legs covering the lower half of my body. With his hand upon my handcuffed hands. While Officer Scalia lifted my head with my hair off the floor and drove my head into the floor. Utilizing his knee and body weight to drive my head down into the floor. Repeating the process 10 times over and over again." [*sic*]

(Pltf's Decl., ECF No. 55 at 4-5 ¶6.)

> "Plaintiff did turn his head to ask officer Huerta what he said. During the escort from the shower to the cell." [*sic*]

(Id. at 5 ¶ 7.)

> "Plaintiff plead [*sic*] guilty to the charged rule violation. No appeal was filed, [*sic*] There is no challenge to the administrative rule violation. The challenge is to the treatment after prone upon the floor. Under complete control providing no action that could be provocative." [*sic*]

(Id. at 6 ¶ 8.)

---

[6] Plaintiff states that under 15 CCR § 3327, "[u]pon completion of a disciplinary-free period for Division D, E, and F offenses as provided in section 3328, an eligible inmate may apply to their caseworker for credit restoration by submitting a CDC Form 958 . . . Application for Inmate's Restoration of Credits. [and] [a] restoration hearing shall be conducted within 30 days of the inmate's application." 15 CCR § 3327(b). Plaintiff has now written the Counselor, Warden, and case records to request that these credits be restored.

13

Plaintiff asserts that when his deposition was taken, defense counsel Duggan was aware that Plaintiff was suffering from schizophrenia and taking medication. (Pltf's Decl., ECF No. 55 at 4 ¶4.) Plaintiff also asserts that during December 2018, he suffered auditory and visual hallucinations, extremely painful cervical and lumber spinal pain resulting in a lack of sleep and ability to concentrate. (Id.)

## X. DISCUSSION

### A. Sham Declaration

Defendants argue that Plaintiff's declaration, filed in his opposition to the motion for summary judgment on August 7, 2019, is a sham declaration that should be excluded because it contradicts his deposition testimony. Defendants argue that Plaintiff's declaration contradicts Plaintiff's own versions of the excessive force incident found in the Complaint and Plaintiff's deposition, and they contend that Plaintiff submitted his new declaration solely in an attempt to avoid the Heck bar.

The court may not make credibility determinations or weigh conflicting evidence at this stage of the proceedings, and it must draw all inferences in the light most favorable to the nonmoving party. [A]t this stage of the litigation, the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial. Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009) (citing Dominguez–Curry v. Nevada Transp. Dep't., 424 F.3d 1027, 1036 (9th Cir. 2005) (internal quotation marks omitted)). However, the court does recognize that Plaintiff has offered facts that appear contradictory. Defendants offer evidence that Plaintiff's account of the facts differs as to whether he turned his head toward defendant Huerta, whether he resisted Defendants during the escort, and whether he is only challenging the excessive force used after he was prone on the floor.

The court finds that the facts in conflict raised by Defendants are immaterial to the ruling on this motion for summary judgment. This is because Plaintiff may, consistent with Heck,

pursue a claim that although having a right to use reasonable force when Plaintiff resisted, the officers responded with excessive force. See Rodriguez v. City of Modesto, 555 Fed.Appx. 643, 645 (9th Cir. 2013). Under such a claim it is immaterial whether Plaintiff resisted the officers or whether he only challenges the excessive force used after he was prone on the floor. Therefore, the court declines to find that Plaintiff's declaration triggers the sham affidavit rule.

### B. Heck-bar

Defendants argue that Plaintiff's excessive force claims against C/O Huerta and C/O Scalia are barred by the Supreme Court's decisions in Heck v. Humphrey, 512 U.S. 477 (1994), and Balisok v. Edwards, 520 U.S. 641 (1997) because an award for damages would necessarily imply the invalidity of his disciplinary conviction for "Willfully Resisting a Peace Officer Resulting in the Use of Force" pursuant to Cal. Code Regs., tit. 15 § 3005(d)(1). Because Plaintiff's disciplinary conviction has not been invalidated and his forfeited behavioral credits have not been restored, Defendants argue that his excessive force claims are inconsistent with his disciplinary conviction, and thus must be brought in a habeas action, not pursuant to 42 U.S.C. § 1983.

Uncontroverted evidence in the record shows that after investigation and a disciplinary hearing conducted on February 13, 2015, Plaintiff was convicted of "Willfully Resisting a Peace Officer Resulting in the Use of Force" in violation of Cal. Code Regs., tit. 15 § 3005(d)(1) and assessed a 90-day loss of credits which have not been restored. (Borunda Decl., ECF No. 51-4 ¶ 3 & Exh. A; Duggan Decl. ECF No. 51-5 ¶ 2 & Exh. B at 29-33.)

In several cases, the Ninth Circuit has applied Heck's favorable termination requirement to consider, and sometimes preclude, excessive force claims brought pursuant to 42 U.S.C. § 1983. For example, in Cunningham v. Gates, the Ninth Circuit found that § 1983 excessive force claims filed by a prisoner who was convicted of felony murder and resisting arrest were barred by Heck because his underlying conviction required proof of an "intentional provocative act" which was defined as "not in self defense." 312 F.3d 1148, 1152 (9th Cir. 2002). A finding that police had used unreasonable force while effecting the plaintiff's arrest, the court held, would "call into question" the validity of factual disputes which had necessarily already been resolved

in the criminal action against him. Id. at 1154. However, in Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit considered whether excessive force allegations of a prisoner who pled guilty to resisting arrest pursuant to Cal. Penal Code § 148(a)(1) were barred by Heck,, and found that "Smith's § 1983 action was not barred . . . because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction." Id. at 693. Under such circumstances, the Ninth Circuit held that Smith's § 1983 action "neither demonstrated nor necessarily implied the invalidity of his conviction." Id.; see also Sanford v. Motts, 258 F.3d 1117, 1120 (9th Cir. 2001) ("If the officer used excessive force subsequent to the time Sanford interfered with the officer's duty, success in her section 1983 claim will not invalidate her conviction. Heck is no bar."); Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under Cal. Penal Code § 148(a)(1) does not "bar a § 1983 claim for excessive force under Heck if the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'").

Here, unlike the defendants in Cunningham, defendants Huerta and Scalia have not shown that Plaintiff's excessive force claims against them are necessarily inconsistent with his adjudication of guilt for "Willfully Resisting a Peace Officer Resulting in the Use of Force." The factual context in which the force was used is disputed. Thus, even though Plaintiff was found guilty of willfully resisting the officers, C/O Huerta and C/O Scalia could, if Plaintiff's testimony is believed, nevertheless be found liable for responding "maliciously and sadistically" with the intent to cause him harm. See Hudson v. McMillian, 503 U.S. at 1, 7 (1992); El-Shaddai v. Wheeler, 2011 WL 1332044, at *5 (E.D. Cal. Apr. 5, 2011) (finding that an Eighth Amendment excessive use of force claim is not Heck-barred because "a judgment for plaintiff on his Eighth Amendment claim would not necessarily imply the invalidity of his disciplinary conviction" for willfully resisting a peace officer); Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (conviction for resisting arrest did not result in Heck bar to claim for excessive force during arrest "when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'"); Simpson v. Thomas, 2:03-cv-0591 MCE GGH, 2009

WL1327147 at *4 (E.D. Cal. May 12, 2009) (success on the plaintiff's Eighth Amendment excessive force claim would not necessarily invalidate his conviction pursuant to Cal. Code Regs., tit. 15 § 3005(d)(1) because "even if Defendant acted unlawfully by using excessive force, Plaintiff could still have been guilty of battery"); accord Gipbsin v. Kernan, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701 at *5-6 (E.D. Cal. 2011); Gabalis v. Plainer, No. CIV S-09-0253-CMK, 2010 WL 4880637 at *7 (E.D. Cal. 2010) ("It is possible for defendants to have used excessive force and for plaintiff to have attempted to assault a correctional officer. Thus, success on plaintiff's civil rights claims would not necessarily imply that the guilty finding and resulting loss of good-time credits is invalid").

Thus, a finding in Plaintiff's favor in the excessive force case would not necessarily imply the invalidity of Plaintiff's disciplinary conviction and punishment as Plaintiff's theory depends on a finding that the excessive force used against him was subsequent to when he resisted the officers, ie., when he was handcuffed and lying prone on the concrete floor.[7] Moreover, even if Plaintiff alleges that excessive force was used against him while he was being escorted and was resisting Defendants, a finding in Plaintiff's favor in the excessive force case would not necessary imply the invalidity of Plaintiff's disciplinary conviction for resisting the officers. See Rodriguez, 555 Fed.Appx. at 645. The court cannot say therefore that Plaintiff's excessive force claims "necessarily imply the invalidity" of his conviction. Heck, 512 U.S. at 487, and thus recommends that Defendants' motion for summary judgment be denied.

## XI. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff's excessive force claims in this case are not barred by the favorable termination rule of Heck v. Humphrey, and Defendants' motion for summary judgment should be denied.

///

---

[7] "If the evidence reviewed in the light most favorable to [Plaintiff], could support a finding of excessive force, then the defendants are not entitled to summary judgment. 'Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" City of Hemet, 394 F.3d at 701 (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Defendants Huerta and Scalia's motion for summary judgment, filed on July 24, 2019, (ECF No. 51), be DENIED; and
2. This case be referred back to the Magistrate Judge for further proceedings, including preparation for trial.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten **(10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d at 838-39 (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __November 20, 2019__          _____/s/ Gary S. Austin_____
                                      UNITED STATES MAGISTRATE JUDGE